THORNTON, (a Slave,) plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] The offence of being an accessory before the fact in murder, is one that may be committed by a slave; and one which, if committed by a slave, is to be punished with death.

[2.] A slave convicted of murder, but not sentenced, is a competent witness for the State, on the trial of another slave indicted as accessory before the fact in the murder.

Accessory before the fact to murder, from Greene county. Decided by HARDEMAN, March Term, 1858.

Thornton, a slave, was indicted as accessory before the the fact to the crime of murder, in abetting and procuring a negro slave, John, to commit the murder.

Upon his arraignment, and before pleading to the indictment, Thornton and his master, Robert C. Daniel, demurred and excepted to the same, on the grounds that there was no offence set forth and charged in the said indictment, of which the accused could be prosecuted, corrected or punished, and that the offence of accessory before the fact, which was the offence set forth and charged in the indictment, was an offence that could not be committed by a slave, and that a slave was not liable to be prosecuted or punished for said of-

fence, the crimes and offences prescribed by the penal code being alone applicable to free white persons, and not to slaves or free persons of color.

After argument on this demurrer, the Court overruled the same, and the defendant excepted.

The accused then pleaded not guilty to the indictment.

In the course of the trial, the State offered as a witness, a negro slave of the name of John, who had been convicted of the murder for which the accused was indicted as accessory before the fact, but on whom judgment had not been passed.

Counsel for the accused objected to the competency of this witness, on the ground of his having been convicted of the crime of murder as aforesaid.

The Court overruled this objection, and decided that the said slave John was a competent witness, and the defendant excepted.

The defendant was found guilty and sentenced to death.

Counsel for defendant thereupon filed his bill of exceptions assigning the above rulings and decisions of the Court as error.

Cone, for plaintiff in error.

Lofton, Sol. Gen., *contra.*

*By the Court.*—Benning, J. delivering the opinion.

Is the offence of being an accessary before the fact in murder, one that can be committed by a *slave*? If it is, is the punishment *death?*

In 1821, the Legislature declared, that "murder of a free white person," "when committed by a slave," should be a capital offence. *Cobb Dig.* 995.

Does the offence of murder, as here declared, include the offence of being an accessary before the fact in murder? If it does, both questions are to be answered in the affirmative.

The Legislature, doubtless, meant by "murder," what was murder by the law, as the law then was; namely, in 1821.

The law as it then was, was the code of 1817. Did murder, by that code, include the offence of being an accessary before the fact in murder?

The first section of the second division of the code, is as follows: "An accessary is he who stands by, aids and assists; or, who not being present, aiding, abetting, or assisting, hath advised and encouraged the perpetration of the crime. He or she, who thus aids, abets, or assists, shall be called a principal in the second degree."

Here, advisers *before* the fact, that is, accessaries before the fact, and aiders *at* the fact, are placed on the same footing, and equally made *principals* in the second degree.

But by the common law, a principal in the second degree, in murder, was a murderer, and might be charged in the indictment, as being guilty of murder. 1 *Chitty Cr. Law* 260; 1 *Arch. Cr. Pr. and Pl.* 13, 14.

It would seem to follow, that, by the code of 1817, murder included in itself, the offence of an accessary before the fact in murder.

Again, the code of 1817, no where prescribes in so many words, any punishment for what it thus, calls, principals in the second degree. It merely defines offences, and affixes to them, punishments. Therefore, unless we say, that these defined offences, include within themselves, the offence of the principal in the second degree, as well as the offence of the principal in the first degree, we say, that the offence of the principal in the second degree, was to go unpunished. But we are not at liberty to say, that the legislature intended the offence of the principal in the second degree, to go unpunished. If such had been its intention, it would not have devoted a whole division of the code, to "accessaries in crimes."

The English Courts hold, that, "when an offence is punishable by a statute which makes no mention of principals in the second degree, such principals are within the meaning

of the statute as much as the parties who actually commit the offence." 1 *Arch. Cr. Pr. & Pl.* 13. *The Coalheavers' case*, i ; *Leach Cr. cases*, 64 ; *The King vs. Taylor & Shaw, and note*, *Id.* 360

It is true, that the code of 1833, makes accessaries before the fact, a class by themselves; but, so far as punishment is concerned, it makes no distinction between them, and aiders and abettors at the fact, whom alone it calls principals in the second degree. *Cobb Dig.* 781. This may also be said of the common law. 3 *Black. Com.* 39.

[1.] We think, then, that by the act of 1821, a slave may be guilty of the offence of being an accessary before the fact in murder; and that when one is so guilty of that offence, he is to be punished with death.

And the act of 1821, is the act which is to govern ; for it is the latest. If, therefore, there is, in the second section of the act of 1816, " for the trial and punishment of slaves," anything repugnant to the act of 1821, that thing is to be disregarded. Perhaps, the maxim, " A statute which treats of things or persons of an inferior rank cannot by any *general words* be extended to those of a superior," (1 *Black. Com.* 88,) is sufficient to authorize us to say, that there is nothing in that section repugnant to the act of 1821.

[2.] Was John, the slave who had been convicted of the murder, but on whom sentence had not been passed, a competent witness for the State? We think that he was. The common law says, that what works the disqualification to testify, is, not the verdict, but the *judgment*. 1 *Green Ev.* Sec 375.

It is much to be doubted, whether our statute law is not such, that it will not permit even the judgment to work the disqualification.

The act of 1816, " to carry into effect the penal code," provides, (and seemingly, as a matter of course,) for taking the testimony of *convicts in the Penitentiary*. *Cobb Dig*. 266.

The Code of 1833 declares, that any person who shall be convicted of perjury, false swearing, or subornation of perjury, shall, in addition to the punishment specified for those offences, be forever disqualified from being a witness in any matter in controversy.  *Cobb Dig.* 804.  And *inclusio unius, exclusio alterius.*

" On the trial of a slave, or free person of color, any witness shall be sworn who believes in God and a future state of rewards and punishments."  *Sec 5 of Act of* 1816 *for the trial &c. of slaves.  Id.* 988.

We agree, then, with the Court below, and affirm the judgments excepted to.

Judgment affirmed.